[Crim. No. 7467. Fourth Dist., Div. Two. Dec. 15, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK HEWITT, Defendant and Appellant.

**COUNSEL**

Robert Wm. Speer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Conrad D. Petermann and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—Defendant was found guilty by a jury of grand theft. Pronouncement of judgment was withheld and he was granted three years' probation.

---

\*Before Gardner, P. J., Kaufman, J., and McDaniel, J.

## FACTS

In March 1973, Jason Whisenant read a newspaper advertisement for the sale of a 1971 Ford camper truck. The truck had been placed for sale by defendant, a long-time dealer in automobiles. Whisenant viewed the truck at defendant's home and decided to purchase it. A written contract was entered into for the sale. A portion of the contract was entitled "Statement of Insurance" and listed a purchase price for an insurance policy of $397.76. The name Westgate Life and the signature of Victor Batross were also contained under that portion of the contract. Defendant explained to Whisenant the insurance would make the payment on the truck if Whisenant died or became disabled, and that the bank preferred such insurance be taken out on the vehicle. Whisenant agreed to purchase the insurance policy based on defendant's representation and presented $500 in cash as a down payment on the vehicle.

After the sale defendant sold the Whisenant contract to the American Security Bank. Defendant's account was credited by the bank with a sum equal to the balance owing on the contract and the purchase price of the life and disability insurance policy.

Jason Whisenant, after the sale of his contract to the American Security Bank, made payments to that institution. In June 1973 Whisenant was injured and after December of that year was unable to make further payments to the bank. Whisenant made numerous inquiries of defendant concerning the insurance. Defendant produced no policy and stated the insurance company had gone bankrupt and defendant could do nothing more than return Whisenant's premium. Whisenant was unable to make further payments and his vehicle was repossessed.

Mr. Herbert Kliewer, the agent for the Westgate Life Insurance Company in the San Bernardino area, at no time was presented with either an application for or premium for credit life and disability insurance under the name Whisenant.

Mr. Batross, a licensed insurance agent whose purported signature appeared on the Whisenant contract, did not in fact sign that agreement nor authorize defendant to sign his name to any such agreement, and defendant at no time presented money to Batross for the purchase of insurance.

Other evidence was produced that both defendant and Mr. Batross were former sales managers at LeMans Datsun. Mr. Batross, during his tenure at the car agency, had his insurance license hanging on the wall. When Mr. Batross left the car agency, his license continued to hang on a wall and the salesmen wrote insurance through his license and signed his name. Defendant was among this group but was not an employee of the agency at the time of the sale to Whisenant.

Defendant testified that he had telephoned Mr. Kliewer and told him that he was leaving an insurance check of $397.76 for him at LeMans Datsun. The general sales manager for LeMans Datsun testified that such a check was left on his desk for Mr. Kliewer.

Although years earlier defendant had been licensed for the type of insurance sold to Whisenant, at the time of the transaction the license had been long expired (about 10 years). Defendant was not licensed to sell insurance.

## DISCUSSION

■ Defendant's grand theft conviction rests on diversion or appropriation of fiduciary funds (insurance premiums) pursuant to Insurance Code section 1733.[1] Defendant contends that the language of section 1733 applies only to *licensed* insurance agents. If he is correct, the conviction must be reversed. The determinative question concerns the proper interpretation of the section. The People concede that he was not a licensed insurance agent. Our conclusion is that both licensed and unlicensed persons are covered by the code section.

The Insurance Code provision is first found in the 1925 enactment of former Penal Code, section 506b. In essence it provided that either licensed or unlicensed insurance agents or brokers who fraudulently converted money received in that capacity were guilty of embezzlement.[2]

---

[1]Insurance Code, section 1733 provides: "All funds received by any person acting as an insurance agent, broker, or solicitor, life agent, life analyst, surplus line broker, special lines surplus line broker, motor club agent, or bail agent or solicitor, as premium or return premium on or under any policy of insurance or undertaking of bail, are received and held by such person in his fiduciary capacity. Any such person who diverts or appropriates such fiduciary funds to his own use is guilty of theft and punishable for theft as provided by law."

[2]Penal Code, section 506b (1925): "An insurance agent or broker, *whether licensed or unlicensed,* who fraudulently converts to his own use or, with the intention to fraudulently convert to his own use, takes, secretes, withholds, appropriates, or otherwise uses or applies any money or substitute for money received by him as such agent or

In 1933 the language of the Penal Code provision was substantially amended. The descriptive term "insurance" was removed from the word "agent," it was clarified that insurance monies were received in a fiduciary capacity, and the crime for diversion was changed to theft.[3] The phrase "whether licensed or unlicensed" was deleted.

Two significant factors arise from the 1933 amendment. First, though the "licensed or unlicensed" provision was deleted, on its face it clearly applied to both classifications. There was no limiting terminology. Apparently the license references were deleted as surplusage. If the Legislature intended limitation to either licensed or unlicensed persons alone, it would have been necessary to qualify the statute with such limiting language in light of the terminology deleted from the 1925 version. As enacted in 1933, it covered persons in either status.

Second, the 1933 amendment is in remarkably similar language to the Insurance Code section under review.[4] Section 1733 streamlines the language but does not significantly change it.

At this point we think the conclusion is clear that section 1733 is intended to encompass both licensed and unlicensed persons receiving insurance premiums. We shall relate the balance of the history of the code section which will demonstrate no definitive legislative attempt to change the scope of the crime from its foundation in the Penal Code.

As a part of the adoption of the Insurance Code in this state (Stats. 1935, ch. 145, p. 496) in 1935, Penal Code, section 506b was repealed (Stats. 1935, ch. 145, p. 779) and replaced with former Insurance Code, section 1730.[5] The language of section 1730 is substantially the same as repealed Penal Code, section 506b.

---

broker, contrary to the instructions or without the consent of the company or the person for or on account of which the same was received by him, shall be guilty of embezzlement." (Stats. 1925, ch. 183, § 1, p. 333.) (Italics added.)

[3]Penal Code, section 506b (1933): "All funds received by any agent, solicitor or broker, as premium or return premium on or under any policy of insurance, shall be received by such agent, solicitor or broker in his fiduciary capacity, and any agent, solicitor, or broker who diverts or appropriates such funds to his own use shall be guilty of theft and shall be punished as provided in this code therefor." (Stats. 1933, ch. 530, § 1, p. 1349.)

[4]All references to substantial or unsubstantial changes in the statutes under discussion are intended to be limited to only those matters directly before us on this appeal. Expansions in definitions of the types of activities covered and refinements in language that may be significant in the insurance industry are not addressed herein.

[5]Insurance Code, section 1730 (1935): "All funds received by any agent, broker or solicitor, as premium or return premium on or under any policy are received by such

In 1937 section 1730 was amended but remained substantially the same.[6] The qualifying reference to insurance as found in the 1925 enactment of the Penal Code was returned to the statute. It was an act of clarification by the Legislature and expansion of status terminology.

Again in 1951, section 1730 was amended without significant change for our purposes.[7] Finally, in 1959, former section 1730 was repealed and replaced with a substantially similar statute which is current section 1733.

The historical development of the offense seems quite clear. One diverting or appropriating monies received as insurance premiums, whether or not a licensed insurance agent, is guilty of theft.

Defendant has directed our attention to the headnotes used in West's Annotated Code. These headnotes of a publisher are clearly not of any legal significance in construing the statute. (*In re Halcomb,* 21 Cal.2d 126, 130 [130 P.2d 384].) However, the contention could have been carried further by reliance on the Legislature's headnoting system in the various enactments.

Thus, the enactment of section 1733 was part of a 1959 revised legislative scheme and sections 1724-1736 were placed under "Article 12" entitled "Conduct of Licensee." The act was an urgency measure and thus in section 20 of the act the Legislature recited, in part: "This act revises and codifies the provisions of the Insurance Code providing for the licensing and regulation of insurance producers applicable to fire and casualty agents, brokers and solicitors and to life disability and life and disability agents . . . ." (Stats. 1959, ch. 4, § 20, pp. 1832-1833.)

agent, broker or solicitor in his fiduciary capacity. Any agent, broker or solicitor who diverts or appropriates such funds to his own use is guilty of theft and punishable for theft as provided by law." (Stats. 1935, ch. 145, p. 585.)

[6]Insurance Code, section 1730 (1937): "All funds received by any insurance agent, broker or solicitor, life agent, surplus line broker, or motor club agent as premium or return premium on or under any policy are received by such agent, broker or solicitor in his fiduciary capacity. Any agent, broker or solicitor who diverts or appropriates such funds to his own use is guilty of theft and punishable for theft as provided by law." (Stats. 1937, ch. 652, § 22, p. 1795.)

[7]Insurance Code, section 1730 (1951): "All funds received by any person acting as an insurance agent, broker or solicitor, life agent of any type, life analyst, surplus line broker, special lines surplus line broker, motor club agent or bail agent or solicitor, as premium or return premium on or under any policy of insurance or undertaking of bail, are received and held by such person in his fiduciary capacity. Any such person who diverts or appropriates such fiduciary funds to his own use is guilty of theft and punishable for theft as provided by law." (Stats. 1951, ch. 607, § 1, p. 1769.)

In 1937 the Legislature had placed former section 1730 under a headnote entitled "License Offenses." In 1935 it placed it in an article entitled "Fiduciary Funds of Insurance Agents, Brokers and Solicitors." These headnotes of the Legislature are not conclusive. Some cases would go so far to conclude they are irrelevant. *(In re Halcomb, supra.)* We think they may properly be considered as a clue to legislative intent where legislative history is absent or inconclusive. We have weighed the development of the code section against these headnotes and have concluded they are not determinative. They suggest support for defendant's position but are alone insufficient to justify abandonment of the clear development of the statute commencing in 1925. Further support to this conclusion is found in the plain language of the statute.

Section 1733 makes it a crime to divert or appropriate insurance premiums by *any person acting as* an insurance agent. The statute does not say by a licensee or use any similar limiting terminology. The plain words on the face of the statute and the historical development are consistent. Whether licensed or not, *any person acting as* an insurance agent may be guilty of theft as contemplated by section 1733.

There has been some discussion in the briefs concerning drawing the scope of section 1733 from the other sections included in the same article. Looking to sections 1724-1736 we discover only two sections that make no reference to the licenses or license status of the persons referred to. One, of course, is 1733 and the other is 1735.5. The latter section is of no assistance in that it merely lays down rules concerning set-offs against amounts payable to an insured. The instant approach is inconclusive and if it supports anything it is that the limiting language of licensee being omitted in 1733 is a signal for broader application of that section than what is urged by defendant.

Defendant also contends a close reading of 1733 discloses the legislative assumption of a preexisting fiduciary duty. Thus, defendant would argue, the Legislature only intended application to licensees. Omitting portions of 1733, it would read: "All funds received . . . as premium . . . are received and held by such person *in his fiduciary capacity.*" (Italics added.) The section goes on to state: "*Any such person* who diverts or appropriates . . . is guilty of theft . . . ." (Italics added.) The "any such person" is the person who has the preexisting fiduciary capacity, to wit, the licensee. The contention omits consideration of the fact that any person can be found to be a fiduciary when knowingly and wrongfully in possession of another's property. In a sense all people have

a preexisting fiduciary capacity. All 1733 does is declare that when premium monies are received by any person acting as an insurance agent, this fiduciary role is triggered, even though the receipt itself is not necessarily wrongful.

A final comment is necessary for clarification. The provisions of section 1733 cannot apply to every person who merely receives premium monies. The statute goes one step farther. It is necessary that the person *act as an insurance agent,* etc. This is the limitation. We do not propose to define the limits of this language. The facts before us amply demonstrate that defendant was *acting as an insurance agent* and he makes no contention to the contrary.

Both the history of the statute and its plain language require its application to this defendant. While the defendant is generally to receive the benefit of any doubts concerning statutory meaning, here the statute is sufficiently clear to preclude application of that principle.

Judgment affirmed.